UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

06 MAY -8 PM 12: 28

MARK ALBRECHT, etc., et al.
Individually and on behalf of others
similarly situated

        Plaintiffs,

vs.

BRIAN TREON, M.D., etc., et al.

        Defendants.

Case No. __1:06 CV 274__

Judge __WEBER, J.__
    J. BLACK

**MOTION FOR CERTIFICATION OF
DEFENDANT'S CLASS, AND
CERTIFICATION OF PLAINTIFFS'
CLASS**

Now come Plaintiffs and move this Honorable Court for the certification of a class of

defendants consisting of all county coroners and/or medical examiners in the State of Ohio which

have removed, retained, and disposed of body parts without prior notice to next of kin, and the

County Commissions and Commissioners of those counties. In consequence of this certification

of a class of defendants, plaintiffs further move this Honorable Court, pursuant to Civ.R. 23(c),

to expand the relief already granted in *Hainey v. Parrott*, by certifying a class in this case to

include all beneficiaries or next of kin of decedents who have had their decedent's body parts

and/or organs removed and retained in Ohio by members of the defendant class without notice

and/or in reckless disregard of whether there was any objection or refusal by said next of kin to

allow such procedure and taking to occur.

In evaluating a motion to certify a class a court must not consider the merits of the action,

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156,178 (1974); *In re Cincinnati Radiation Litigation*,

187 F.R.D- 549, 551 (S.D. Ohio 1999), but must accept as true the allegations of the complaint.

*Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978); *Blackie*

1

*v. Barrack*, 524 F.2d 891, 901 n.l7 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976). Doubts regarding certification should be resolved in favor of the certifying party. See *Thompson v. Community Ins. Co.*, 213 F.R.D. 289,291 (S.D. Ohio, 2002.)

## Defendant Class Actions

Although class actions are more frequently filed as plaintiff class actions, defendant class actions are clearly contemplated by Civ.R. 23. *Thillens, Inc. v. Community Currency Exchange Ass'n of Illinois, Inc.*, 97 F.R.D. 668, 673 (D.C. Ill., 1983). Such actions are particularly appropriate against similarly situated public officials. The court in *Akron Center for Reproductive Health v. Rosen*, 110 F.R.D. 576, 579 (N.D. Ohio, 1986) noted

> The procedural device of certifying a defendant class action of enforcing officials is well established in cases such as the one at bar.

The *Rosen* court explained at 580

> the plaintiffs still bear the burden of establishing their right to use the class action device. *Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir.1976), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). They must establish their right to use the class action by satisfying all four criteria of Rule 23(a) as well as the criteria of one of the three subsections of Rule 23(b).

The four criteria set forth in Civ.R. 23(a) are (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

## Numerosity

There are 88 counties in Ohio, and each has a county coroner or county medical examiner.[1] Obviously, these officials are geographically located throughout the state of Ohio.

---

[1] R.C. 313.01 provides "A coroner shall be elected quadrennially in each county, who shall hold his office for a term of four years, beginning on the first Monday of January next after his

The number and dispersion of these officials render joinder of all members of the defendant class impracticable. The court in *Alvarado Partners, L.P. v. Mehta*, 130 F.R.D. 673, 675 (D. Colo., 1990) explained

> The determination of whether joinder of the members is impractical turns on the facts of each case, not solely on the number of members. *See, e.g., Dale Elec., Inc. v. RCL Elec., Inc.*, 53 F.R.D. 531, 534 (D.N.H.1971) (13 defendants); *see also Newberg on Class Actions* § 3.04 at 138 (1985) (*Newberg*). Considerations of the geographical dispersion of the defendants is also necessary. *See Newberg* § 3.04 at 138 & n. 52. Furthermore, the requirements of Rule 23(a)(1) are applied more liberally when certifying a defendant class than when certifying a plaintiff class. *See Newberg* § 4.55 at 394-95.

The court in *Appoloni v. U.S.*, 218 F.R.D. 556, 561 (W.D. Mich., 2003) noted

> While not an absolute rule, it is generally accepted that a class of 40 or more members is sufficient to establish numerosity. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995)(stating that "numerosity is presumed at a level of 40 members") (citing 1 *Newberg On Class Actions, 2d,* § 3.05 (1985 ed.)).

The court in *Monaco v. Stone*, 187 F.R.D. 50, 66 (E.D.N.Y., 1999) considered a defendant class consisting of all 62 county sheriffs in the state of New York. The court reasoned

> While the question of whether joinder is impracticable depends on the particular circumstances of the case, a higher threshold number of members is required for a plaintiff class than for a defendant class. *Luyando*, 124 F.R.D. at 56 (citing 1 H. Newberg, Newberg on Class Actions, 2d ed., § 4.55 at 395). As discussed above, a class of more than forty members raises a presumption that joinder is impracticable. *See Robidoux*, 987 F.2d at 936; *see also Marcera v. Chinlund*, 91 F.R.D. 579, 583 (W.D.N.Y.1982) (defendant class of thirty-five sheriffs satisfies numerosity requirement). In addition, the defendant class members are scattered

---

election." Summit County, however, Ohio's only Home Rule Charter county, denominates the position as the county "Medical Examiner." Section 4.03 of the Summit County Charter provides "As of January 5, 1997, the elective office of Coroner is abolished, and no election for such office shall be held at the 1996 general election in the County. Thereafter, all powers now or hereafter vested in and all duties now or hereafter imposed upon coroners by general law shall be exercised and carried out by the Medical Examiner, who shall be appointed by and serve under the direction, and at the pleasure of, the County Executive, subject to confirmation by County Council. The Medical Examiner shall also have such powers and duties not inconsistent with those provided by general law as shall be established by the County Executive."

throughout the state. Accordingly, I find that the defendant class of sheriffs satisfies the numerosity requirement of Rule 23(a)(1).

Based on the number of defendant class members and the fact that the defendant class members are dispersed throughout the State of Ohio, this class satisfies the numerosity requirement of Civ.R. 23(a)(1).

## **Commonality**

The Sixth Circuit in *Alkire v. Irving*, 330 F.3d 802, 820 (2003) explained

Although Rule 23(a)(2) refers to common questions of law or fact, in the plural, there need only be one question common to the class--though that question must be a "common issue the resolution of which will advance the litigation." *Sprague*, 133 F.3d at 397. *See also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

The court in *Bentley v. Honeywell Intern., Inc.*, 223 F.R.D. 471, 481 (S.D. Ohio, 2004) noted

Some courts explain the commonality requirement as necessitating a "common nucleus of operative fact," and find that the requirement is satisfied "where the Defendant has engaged in some standardized conduct toward the proposed class members." *Mejdreck*, 2002 WL 1838141 at *3; *see also Ludwig*, 2003 WL 22478842 at *2. Finally, factual differences amongst the plaintiffs and/or the proposed class members will not preclude a finding of commonality.

This present case deals with

whether Plaintiffs' constitutional rights were violated when the coroner's office retained and disposed of organs without notice to Plaintiffs. *Hainey v. Parrott* 2005 WL 2397704 (S.D. Ohio, Sep. 28, 2005).

This Court recognized in *Hainey* at *4 that some of these actions were specifically authorized by the laws of Ohio

State law clearly gives the coroner complete discretion in deciding when an autopsy is necessary, with or without the next-of-kin's consent. *See* Ohio Rev.Code § 313.13(A); Ohio Rev.Code § 313.131(B); *Everman v. Davis*, 54 Ohio App.3d 119, 561 N.E.2d 547, 550 (Ohio Ct.App.1989). [FN3] Second, Plaintiffs do not claim that the coroner was not authorized to remove and retain their decedents' brains for purposes of determining the cause of death. State law also

4

clearly authorizes the coroner to maintain custody of the deceased until he ascertains the cause of death or determines that the body is no longer necessary to assist him in the fulfillment of his duties. *See* Ohio Rev.Code § 313.15. By implication, § 313.15 also gives the coroner the authority to retain the body parts or organs which he needs to determine the cause of death.

This Court, however, further recognized at *5 that these same statutory provisions preserve to the next of kin the ultimate right to dispose of the remains

The same statutory provisions which vest the coroner with his authority also give the deceased's next of kin the right of ultimate disposition of the body. *See* Ohio Rev.Code § 313.14 ("The next of kin, other relatives, or friends of the deceased person, in the order named, shall have prior right as to disposition of the body of such deceased person."); *see also Everman,* 561 N.E.2d at 550 (recognizing that § 313.14 creates a "possessory right of a spouse or other appropriate member of the family to the body of the deceased person for the purpose of preparation, mourning, and burial."). Supplementing § 313.14, the *Everman* decision, and the cases cited by the Court in *Brotherton,* are two very early Ohio cases which recognize a spousal right of "decent sepulture," or, in other words, the right to give his or her spouse a decent burial. *See McClellan v. Filson,* 44 Ohio St. 184, 5 N.E. 861, 862 (Ohio 1886); *Farley v. Carson,* 8 Ohio Dec. Reprint 119 (Ohio Dist.Ct.1880)(also available at 1880 WL 6831). Thus, Ohio law shows that the next of kin have a substantial interest in the bodies of their decedents for final disposition or burial.

This Court concluded at *6 that

Plaintiffs do have a cognizable constitutional property interest in their decedent's body parts which the coroner's office violated when it disposed of their decedents' brains without prior notice.[2]

The subject statutes are not local, they are uniform and state wide. The constitutional right articulated is likewise one of every putative class members, regardless where they are in Ohio. The proposed defendant class in this case is comprised of county coroners and/or medical examiners in Ohio which have removed, retained and disposed of body parts without prior notice to the next of kin.

---

[2] This Court rejected defendants' argument that they were entitled to Eleventh Amendment immunity, quasi judicial immunity or qualified immunity. That matter is presently on appeal to the Sixth Circuit.

The members of the defendant class are, by definition, all engaging in identical conduct with respect to the plaintiffs' constitutionally protected right to the remains of their loved ones. The common questions of law and fact in this case are thus clear. This case is based on identical conduct of the members of the defendant class with regard to the removal, retention and disposition of body parts. This case is based upon the requirements of the Ohio Revised Code common to all county coroners and medical examiners. This case is based on the common property interests of the next of kin in the remains of their deceased loved ones under Ohio law. This case is based on the due process provisions of the Constitution of the United States.

The court in *McKay v. County Election Com'rs for Pulaski County, Ark.* 158 F.R.D. 620, 623 (E.D. Ark., 1994) involved a class of 75 county election commissioners who failed to provide adequate access for disabled voters. The court reasoned

> Plaintiffs in seeking to demonstrate questions of law or fact common to the proposed defendant class allege and have offered proof in support of the assertion that defendants have deprived the disabled persons who are qualified to vote in elections the opportunity to vote personally and secretly by failing to provide reasonable accommodations or assistance at polling places in order to overcome physical or mental impairments. Stated differently, defendants have failed to take affirmative steps to comply fully with both federal and state laws enacted to cope with problems confronting disabled voters in casting secret ballots because of physical or mental handicap. The conduct complained of is asserted against each defendant in the proposed class. The pertinent laws, both federal and state, are equally applicable to all of the proposed defendant class members. The Court is persuaded that the common questions of law or fact requirement is established.

In this case, too, the "conduct complained of is asserted against each defendant in the proposed class." In this case, too, the "pertinent laws, both federal and state, are equally applicable to all of the proposed defendant class members." In this case, too, the common questions of law or fact requirement is established.

**Typicality**

Civ.R. 23(a)(3) requires that

the claims or defenses of the representative parties are typical of the claims or defenses of the class.

The court in *Coleman v. McLaren*, 98 F.R.D. 638, 647 (D.C.Ill., 1983) observed

Rule 23(a)(3)'s disjunctive reference to "claims or defenses" should be construed as "claims of a plaintiff in relation to plaintiff's class, or defenses of a defendant in relation to defendant's class".

Though in the context of a plaintiff class, the Sixth Circuit in *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (2000) noted

This Court has summarized this standard: "[a]s goes the claim of the named plaintiff, so go the claims of the class." *Id.*

In the defendant class context, this maxim would be: "[a]s goes the defense of the named defendant, so go the defenses of the class." The court in *Monaco v. Stone, supra*, 187 F.R.D. at 64 explained

With regard to defendant classes, the typicality requirement of Rule 23(a)(3) requires a showing that the named defendants, by pursuing their own interests vigorously, " 'will necessarily raise ... defenses common to the class.' "

In this case the members of the defendant class, as already discussed, are engaging in the same conduct with regard to the removal, retention and disposition of body parts. Their conduct is, by definition, typical across the class and the same conduct of the members of the defendant class gives rise to the same violation of plaintiffs rights. The members of the defendant class are all similarly situated public officials who share common duties and responsibilities under the laws of Ohio and are subject to the due process requirements of the Constitution of the United States. The common set of statutes under which the defendant class operates give rise to a common set of defenses based on those statutes. Finally, the common status of the defendant class as county officials gives rise to a common set of potential immunities.

The court in *McKay v. County Election Com'rs for Pulaski County, Ark., supra*, 158

F.R.D. at 623 -624 noted

> Defendants argue that each county election commission of the seventy-five
> counties in the state of Arkansas is independent requiring, in essence, a separate
> defense of each county commission. This Court is of the view that given the fact
> both federal and state laws in question are equally applicable to the two hundred
> twenty-five commissioners, this argument is without merit. Moreover,
> administrative differences among the seventy-five county commissions are
> irrelevant to a defendant class member's procedural or substantive defenses to the
> viability of plaintiffs' claim.

The defenses available to the named defendant are typical of the defenses available to the

class of defendants.  Thus, the typicality requirement in Civ.R. 23(a)(3) is met.

**<u>Adequacy</u>**

The Sixth Circuit in *Senter v. General Motors Corp.*  532 F.2d 511, 525 (6th Cir., 1976)

observed

> There are two criteria for determining whether the representation of the class will
> be adequate: 1) The representative must have common interests with unnamed
> members of the class, and 2) it must appear that the representatives will
> vigorously prosecute the interests of the class through qualified counsel. Gonzales
> v. Cassidy, 474 F.2d 67, 73 (6th Cir. 1973).

This standard was more recently reiterated by the court in *Bacon v. Honda of America*

*Mfg., Inc.*, 205 F.R.D. 466, 481 (S.D. Ohio, 2001).

Since plaintiffs name the representative in a defendant class action, it is considered

appropriate for the court to examine the class representative carefully to ensure that it will

adequately represent the absent class members.   However, the court in *Monaco v. Stone*,

*supra*, 187 F.R.D. at 66 noted

> For the purposes of defendant classes, however, Rule 23(a)(4)'s adequacy of
> representation requirement tends to merge with the commonality and typicality
> requirements of Rules 23(a)(2) and (3). *See DeAllaume*, 110 F.R.D. at 305 (citing
> *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d
> 740 (1982)). Where there are legal or factual issues common to the class, the

named representative will be likely to protect the interests of the defendant class while defending his or her own interests. *See Consolidated Rail Corp.*, 47 F.3d at 483-84; *Marcera*, 595 F.2d at 1239.

The heightened concern related to adequacy of representation in a defendant class is met in this case. All defendant class members are similarly situated public officials charged by law and sworn by their oath of office[3] to fully and faithfully discharging the same official duties. As discussed above, the members of the defendant class share common questions of fact and law as well as typical defenses so that the representative defendant in this case will protect the interests of the defendant class while defending its own interests. These interests are common to the defendant class, and there is no conflict of interest among the defendant class of coroners. In fact, the Clermont County Coroner is a good representative defendant since on its website the County Coroner of Butler County notes that defendant Dr. Treon is a member of the Ohio State Coroner's Association and the Ohio State Medical Association, and has also served in the office of the Montgomery County Coroner.

Further, the Coroner is represented by the county prosecutor, and this court has experience with the offices of county prosecutor in Ohio which are highly adequate representatives on the issues raised. The prosecutor's office has, in the related *Hainey* case, been aggressive, competent and diligent in defense of this and similar suits.

Further, the obligation to defend county officers in actions to which they are parties is an obligation of the county prosecutor's office imposed by law. The county prosecutors have sworn to faithfully discharge that duty. As the court in *Doe v. Miller*, 216 F.R.D. 462, 466 -467 (S.D. Iowa, 2003) explained

> The proposed Defendant class members and the named representatives in the present action are all Iowa County Attorneys who must each satisfy identical requirements under Iowa Code § 331.751(2) to hold office. Each individual class

---

[3] R.C. 3.23.

9

member is, therefore, equally qualified to act as a class representative. There is no suggestion that this lawsuit is collusive.

The question, then, is whether the named class representatives share the interests of the class without antagonism. All County Attorneys in Iowa are charged by law with a duty to "[d]iligently enforce or cause to be enforced in the county, state laws and county ordinances, violations of which may be commenced or prosecuted in the name of the state, county, or as county attorney, except as otherwise provided." Iowa Code § 331.756(1). As a County Attorney has a duty to enforce, or cause to be enforced, the laws of the State, it follows that this duty must extend to defending the constitutionality of those same laws. <u>Refusal, reluctance, or any other form of goldbrick representation would be to shirk the duty imposed on the official by the voters of his or her county.</u> (Emphasis added.)

The named defendant coroner is therefore clearly adequate to represent the interests of the absent class members and the named defendant is represented by qualified counsel.

Plaintiffs have thus demonstrated that the proposed class satisfies all the requirements of Civ.R. 23(a). In addition to satisfying the requirements of Civ.R. 23(a) plaintiffs in this case must also meet one of the requirements of Civ.R. 23(b). This case satisfies both Civ.R. 23(b)(1) and (2).

## Civ.R. 23(b)(1)

Defendant class actions are plainly permitted under Civ.R. 23(b)(1). *Henson v. East Lincoln Tp.*, 814 F.2d 410, 412 (7th Cir., 1987). The rule provides

(b)An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct <u>for the party opposing the class</u>, or
(B) adjudications <u>with respect to individual members of the class</u> which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; (Emphasis added.)

The court in *In re Integra Realty Resources, Inc.* 354 F.3d 1246, 1263 (10th Cir., 2004) observed

10

FN6. Subsection (1)(A) focuses on the risk of separate adjudications to the nonclass party, * * *, and is satisfied when separate actions would result in "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Fed.R.Civ.P. 23(b)(1)(A). Subsection (1)(B) focuses on the risk of separate actions to the individual potential class members, * * *, and applies when "adjudications [against] individual members of the class ... would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests."

This case qualifies under both (A) and (B). If the next of kin are required to proceed against individual members of the class these separate actions could result in inconsistent and varying adjudications which would establish incompatible standards of conduct for the next of kin. The next of kin have a property right in the remains of their loved ones. They may not be deprived of this right without due process. Inconsistent adjudications on this issue could result in different and incompatible determinations as to the process that is due. This, in turn, would result in incompatible standards of conduct for the next of kin. This is more than the "fact that some plaintiffs may be successful in their suits against a defendant while others may not," which is not sufficient to support certification under Civ.R. 23(b)(1)(A). *Lichoff v. CSX Transp., Inc.* 218 F.R.D. 564, 576 (N.D. Ohio, 2003). This would create a situation where the party opposing the class would not know, because of inconsistent adjudications, to what process it is legally entitled and what protections it had with regard to its protected interest in the remains of loved ones. For example, the difference between a pre-deprivation and a post-deprivation right to a hearing would create in incompatible standard of vigilance with which the next of kin must protect their rights.

The same problem exists under Civ.R. 23(b)(1)(B). Individual determinations as to the nature of the next of kin's property interest and what process is due to protect that interest would, as a practical matter, be dispositive of the obligations, and thus the interests, of the other

members of the class. The determination as to the existence of a property interest, as a practical matter, puts the whole panoply due process rights and obligations into play for all members of the class. Such determinations would also substantially impair or impede the ability of the other members of the class to protect their interests. Again, this is particularly true here since there may be inconsistent determinations as to what process is due.

Presumably, the class of defendants, as public officials, would aspire to comply with the constitutional requirement of due process. A clear, class-wide articulation of those standards would promote that compliance and ultimately would be beneficial to both plaintiff and defendant classes.

## Civ.R. 23(b)(2)

The rule provides

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
* * *
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

Though there is some split of authority on the availability of Civ.R. 23(b)(2) in a defendant class action generally, there is also a specifically recognized exception in the case of defendant classes made up of public officers. The court in *Akron Center for Reproductive Health v. Rosen, supra*, 110 F.R.D. at 579 explained

The procedural device of certifying a defendant class action of enforcing officials is well established in cases such as the one at bar. *See* Comment, *Defendant Class Actions and Federal Civil Rights Litigation*, 33 U.C.L.A. L.Rev. 283 (1985). The Sixth Circuit has indicated that one of the "very limited circumstances" justifying the certification of a defendant class under Rule 23(b)(2) is "where the individual defendants are all acting to enforce 'a locally administered state statute or similar administrative policies.'" *Thompson v. Board of Education of Romeo Community Schools*, 709 F.2d 1200, 1204 (6th Cir.1983) (quoting *Greenhouse v. Greco*, 617 F.2d 408, 413 n. 6 (5th Cir.1980)).

That is clearly the case here. There may not technically be a statute or a written policy in this case, but the confluence of the statutory duties and the practical method of the diagnostic tests creates the equivalent. As the court in *Marcera v. Chinlund* 595 F.2d 1231, 1238 (2nd Cir., 1979) vac. on other grds. sub nom. *Lombard v. Marcera*, 442 U.S. 915 (1979), noted

> FN10. We recognize that this case is not precisely congruent to the usual suit against a class of local public officials. Plaintiffs here are not attacking the facial validity of a locally administered statute of statewide effect, See, e. g., Washington v. Lee, 263 F.Supp. 327 (M.D.Ala.1966) (3-judge court), Aff'd per curiam, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968), but rather a series of similar administrative practices. Nevertheless, the distinction is immaterial under the facts of this case. The challenged behavior of the 42 sheriffs denial of contact visitation is identical; it could not be more so were they acting pursuant to statute rather than their own administrative policies. Since declaratory and injunctive relief is sought against identical behavior, we conclude that this case is a proper (b)(2) defendant class action.

As already discussed at length, the defendant class members have acted similarly in removing, retaining and disposing of the remains of deceased persons. The defendant class members have also failed to act similarly in failing to notify the decedents' next of kin. The plaintiff class in this case seeks a declaration that they, as next of kin, have a protectable property interest in the remains of their deceased loved ones of which they cannot be deprived without due process. The plaintiff class also seeks to enjoin the defendant class from removing, retaining and disposing of the remains of deceased persons without notification of the next of kin. This action thus satisfies the requirements of Civ.R. 23(b)(2).

## Plaintiffs' Class

In conjunction with the certification of the defendant class, plaintiffs therefore seek to expand the relief granted in Hainey to certify a class of plaintiffs in this case to include all beneficiaries or next of kin of decedents who have had their decedent's body parts and/or organs removed and retained in Ohio by members of the defendant class without notice. This is the

same class definition that this Court already certified in its order of August 3, 2004 in *Hainey*. The only difference is that there are additional defendants, and thus additional plaintiff class members. This Court's findings as to the requirements of Civ.R. 23(a) should be identical.

If anything, the numerosity requirement is more clearly established, since there are more plaintiff class members and they are more geographically dispersed. Thus, joinder is even more impracticable.

The same reasoning that this Court used in its August 3, 2004 order still pertains as to commonality and typicality. As this court noted in that order, the common issue is "whether plaintiffs have a legal right to bury the body of their loved ones whole." That is still the common issue here. As this Court also noted in its order, the typical claim is that "a member of their family has had a body part or organ removed and retained by the Coroner's office without their consent." That is still the typical claim.

Finally, as to adequacy, the class representatives in this matter are represented by the same qualified counsel who vigorously prosecuted the *Hainey* action. Nothing in the expansion of that relief, by certifying a class of plaintiffs for the Albrecht representatives in this suit creates any conflict of interest and nor impairs the ability of the class representatives and their counsel to protect the interests of the new class members.

On the same basis, this Court's determination that the expanded plaintiff class meets the requirements of Civ.R. 23(b)(3) should also be the same. This court determined that individual questions did not predominate and thus that common questions of fact and law did. Nothing in this expanded certification changes that. This Court also determined that the class action was the superior method of adjudicating this controversy. If anything, the expanded class buttresses this Court's conclusion on this point. There are an even greater number of individuals who "are

14

unaware that their legal rights may have been violated." It would be even more impractical for each of the unnamed plaintiffs to seek medical records to determine if their rights have been violated. Thus, with the expanded class it would still be, as this Court noted in the August 3, 2004 Certification Order, "in the best interests of the absent members of the class to have this action prosecuted centrally where their rights can be determined."

The expanded plaintiff class, coupled with the defendant class, does raise an interesting issue of standing. As a general rule, the Sixth Circuit noted in *Thompson v. Board of Educ. of Romeo Community Schools* 709 F.2d 1200, 1204 (1983)

> In *LaMar v. H & B Novelty & Loan Company*, 489 F.2d 461, 462 (9th Cir.1973), the Ninth Circuit Court of Appeals held that a plaintiff "cannot represent those having causes of action against other defendants against whom the plaintiff has no cause of action and from whose hands he suffered no injury." This is true even though the plaintiff may have suffered an injury identical to that of the other parties he is representing. *Id.* at 466.

> The court recognized two exceptions to this rule.

> (1) Situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury; and
> (2) Instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.

The exception relevant here is that all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.

The court in *Thillens, Inc. v. Community Currency Exchange Ass'n of Illinois, Inc.*, *supra* 97 F.R.D. at 675 -676 noted

> The requirement that each named plaintiff must have a claim against each defendant may be waived where the defendant members are related by a conspiracy or "juridical link."

> The court explained

> A "juridical link" is some legal relationship which relates all defendants in a way such that single resolution of the dispute is preferred to a multiplicity of similar

actions. *See, e.g., In re Itel Securities Litigation,* 89 F.R.D. 104, 121 (N.D.Cal.1981) (bilateral class action where both plaintiff and defendant classes certified); *LaMar v. H & B Novelty & Loan Co., supra,* at 470.

The concept of a juridical link is particularly appropriate in cases such as this, which involve similarly situated public officials. In *Monaco v. Stone, supra,* 187 F.R.D. at 65-66 the court reasoned

> Because the certification of a defendant class raises due process issues not encountered in the context of a plaintiff class, a defendant class generally should not be certified unless each member of the plaintiff class has a claim against each member of the defendant class. *See DeAllaume v. Perales,* 110 F.R.D. 299, 303 (S.D.N.Y.1986). However, this requirement may be waived where the members of the proposed defendant class are related by a "juridical link." *See Luyando,* 124 F.R.D. at 58; *DeAllaume,* 110 F.R.D. at 303. A juridical link is " 'some [independent] legal relationship which relates all defendants in a way such that a single resolution of the dispute is preferred to a multiplicity of similar actions.' " *Luyando,* 124 F.R.D. at 58 (quoting *Thillens, Inc. v. Community Currency Exch. Ass'n,* 97 F.R.D. 668, 676 (N.D.Ill.1983)). <u>Courts have found that such a link exists when all of the members of the defendant class are state officials who are bound to enforce the state statutes or regulations challenged by the plaintiff. *See Luyando,* 124 F.R.D. at 58-59 (defendant class of 58 local commissioners of social services in New York State). Here, a juridical link exists because all of the members of the defendant class are local criminal court judges bound to enforce CPL § 730.40.</u> (Emphasis added.)

The Sixth Circuit discussed juridical link in *Thompson v. Board of Educ. of Romeo Community Schools,* 709 F.2d 1200, 1204 -1205 (C.A. Mich., 1983)

> It has been held that the juridical relationship among defendants referred to in the second *LaMar* exception is most often found in the following instances: [W]here all members of the defendant class are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute, or common rule or practice of state-wide application, which is alleged to be unconstitutional. *Mudd v. Busse,* 68 F.R.D. 522, 527-28 (N.D.Ind.1975).

As discussed above, the common practice of defendants in this case amounts to a common rule or practice. All members of the defendant class are officials of a single state acting in accordance with that practice. They thus have a juridical link which satisfies the requirements of standing.

Similarly, although the Sixth Circuit discussed juridical links in *Thompson*, it found standing in *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir., 1998) without ever using the term "juridical link"

> Threshold individual standing is a prerequisite for all actions, including class actions. *See O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). A potential class representative must demonstrate individual standing vis-as-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action. *See Brown v. Sibley*, 650 F.2d 760, 770 (5th Cir.1981). As this Court has made clear, however, "once an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants." *Senter v. General Motors Corp.*, 532 F.2d 511, 517 (6th Cir.1976). Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure. *See Cooper v. University of Texas at Dallas*, 482 F.Supp. 187 (N.D.Tex.1979); Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 2.05 (3d ed.1992). Thus, in the instant matter, once the district court correctly determined that Fallick had standing to bring suit under ERISA against Nationwide with respect to its application of reasonable and customary limitations to its determination of medical benefits-- a methodology which, by Nationwide's own admission, it employs in all the benefits plans which Fallick wishes to include under the aegis of the proposed class--the court should then have analyzed whether Fallick satisfied the criteria of Rule 23 with respect to the absent class members.
>
> Where, as here, the crux of an ERISA plaintiff's complaint concerns the methodology used to determine benefits, courts have recognized that the standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under Rule 23 on behalf of all individuals affected by the challenged conduct, <u>regardless of the representative's lack of participation in all the ERISA-governed plans involved</u>. *See Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101 (5th Cir.1993); *Sutton v. Medical Serv. Ass'n of Pa.*, 1993 WL 273429, at *5 (E.D.Pa. July 20, 1993) (Emphasis added.)
>
> The court concluded
>
> The foregoing analysis supports our conclusion that once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong.

This same analysis applies here.

In affirming standing in *Payton v. County of Kane* 308 F.3d 673, 680 (7th Cir,. 2002).

The Seventh Circuit made two particularly helpful points:

> We have begun our analysis with the question of class certification, mindful of the Supreme Court's directive to consider issues of class certification prior to issues of standing. See *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999): "the class certification issues are ... logically antecedent to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing".

and

> We understand *Ortiz* to rest on the long-standing rule that, once a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs. The certification of a class changes the standing aspects of a suit, because "[a] properly certified class has a legal status separate from and independent of the interest asserted by the named plaintiff."

This analytical approach reiterates the applicability of *Fallick* as a basis for standing.

**Conclusion**

For the reasons set forth herein, this Court should certify a class of all county coroners and/or medical examiners in the State of Ohio which have removed, retained, and disposed of body parts without prior notice to next of kin, and the County Commissions and Commissioners of those counties. Correspondingly, this Court should expand the relief granted in *Hainey*, and certify a class of plaintiffs in this case to include all beneficiaries or next of kin of decedents who have had their decedent's body parts and/or organs removed and retained by members of the defendant class without notice and/or in reckless disregard of whether there was any objection or refusal by said next of kin to allow such procedure and taking to occur.

Respectfully Submitted,

Patrick J. Perotti [0005481]
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077
(216) 352-3391 [Telephone]
(216) 352-3469 [Fax]
pperotti@dworkenlaw.com


John H. Metz [0019039]
4400 Carew Tower
441 Vine Street
Cincinnati, OH 45202
(513) 241-8844 [Telephone]
(513) 241-6090 [Fax]
metzlegal@aol.com

Attorneys for Plaintiff