**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **MARK ALBRECHT, et al.**, : | |
| : | Case No. 1:06cv274 |
| Plaintiffs, : | |
| : | DISTRICT JUDGE SUSAN J. DLOTT |
| v. : | |
| : | ORDER GRANTING MOTIONS TO |
| **BRIAN TREON, M.D., et al.**, : | CERTIFY A QUESTION TO THE |
| : | OHIO SUPREME COURT |
| Defendants : | |
| : | |

This matter is before the Court on the Motion of the Cuyahoga County Coroner and the Board of Commissioners of Cuyahoga County (hereafter "Cuyahoga County") to Certify a Question of State Law to the Ohio Supreme Court (doc. 34) and the like motions of 86 other Ohio county coroners and commissioners,[1] Plaintiffs' brief in opposition to these motions (doc. 61), and the coroners' and commissioners' reply memoranda.[2] For the following reasons, the Court grants, with modification, the motions to certify a question to the Ohio Supreme Court.

**I.      BACKGROUND**

This lawsuit is a putative class action against all county coroners and/or medical examiners in the State of Ohio which have removed, retained, and disposed of body parts without prior notice to next of kin, and the County Commissions and Commissioners of those counties. (Doc. 2 at 1.)  Eighty-seven counties (all Ohio counties except Hamilton) are implicated in the suit.

---

[1] See docs. 38, 40, 41, 43, 45, 46, 49, and 53.

[2] See docs. 77, 78, 79, 82, 83, and 85.

1

The fundamental question is whether the relatives of a decedent have a legally cognizable interest under Ohio law, protected by the Fourteenth Amendment, in being notified by the county coroner that the coroner has removed and retained body parts of the decedent for forensic examination while returning the rest of the body to the family. Plaintiffs Mark and Diane Albrecht brought this lawsuit against the coroner of Clermont County, Ohio, as well as the Board of County Commissioners, after discovering from their son's autopsy report that the coroner's office, or others on its behalf, had removed their son's brain for forensic examination and retained it after the autopsy. (Doc. 1 ¶¶ 37-38.) The coroner's office did not notify the Albrechts that their son's brain had been retained. (*Id*. at ¶ 39.) The Albrechts thus buried their son without his brain and without any notice from the coroner of that fact. (*Id*. at ¶ 40.) They allege they have suffered legal damages as a result. (*Id*. at ¶ 41.)

The Albrechts filed their lawsuit on the heels of a nearly identical lawsuit brought by family members of decedents against the Hamilton County coroner. In that case, *Hainey v. Parrott*, Chief District Judge Beckwith granted summary judgment to the plaintiffs after concluding that they had "a cognizable constitutional property interest in their decedent's body parts which the coroner violated when it disposed of their decedents' brains without prior notice." Order Granting Mot. Summ. J., No. 1:02cv733, 2005 WL 2397704 at *6 (S.D. Ohio Sept. 28, 2005). Defendants appealed the Order to the Sixth Circuit Court of Appeals but then settled the lawsuit. As a result, the Sixth Circuit has not had an opportunity to affirm or overturn Judge Beckwith's Order.

The county coroners and commissioners in this lawsuit generally assert that Judge Beckwith "improperly expanded" Sixth Circuit precedent and "misinterpreted" Ohio law when

she concluded that next of kin have a property interest in a decedent's organs. They ask this Court to depart from the course set out in *Hainey* and instead certify to the Supreme Court of Ohio the following question:

> Whether the next of kin of a decedent, upon whom an autopsy has been performed, have a property right under Ohio law in the decedent's tissues, organs, blood or other body parts that have been removed and retained by the coroner for forensic examination and testing.

(Doc 34 at 1.)

## II.   ANALYSIS

### A.   Standard for Certifying a Question

The decision to certify a question of state law to a state supreme court is within the district court's discretion. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). "[U]se of the certification procedure is most appropriate when the question of state law is new or state law is unsettled." *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995). Furthermore, "[n]ovel or unsettled questions of state law may be appropriate for certification where certification will save time, energy and resources, or where there are conflicting federal interpretations of an important state law question which would otherwise evade state court review." *Metz v. Unizan Bank,* 416 F. Supp.2d 568, 574 (N.D. Ohio 2006) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 77 (1997); *Geib v. Amoco Oil Co.*, 29 F.3d 1050, 1060 (6th Cir. 1994)).

The Ohio Supreme Court has established the appropriate standard for certifying questions, specifying that (1) the question of Ohio law must be determinative of the proceeding, and (2) there must be no controlling Ohio Supreme Court precedent on the issue. Ohio Sup. Ct

3

R. Prac. XVIII, Sec. 1. The preliminary question, therefore, is whether Defendants' proposed question is determinative of this proceeding. The Court holds that, with modification, it is.

### B. Procedural Due Process

Plaintiffs allege that they were denied due process of law when the county "took" body parts of their son. To ascertain whether Plaintiffs, in fact, have recourse for their alleged injury depends on whether they possess a right to their son's body parts that is afforded procedural due process protection. The Sixth Circuit has described the origin and nature of rights entitled to procedural due process, explaining that while the right itself is state-created, one's entitlement to pre-deprivation due process of that right is a federal matter:

> The touchstone of procedural due process is the fundamental requirement that an individual be given the opportunity to be heard "in a meaningful manner." *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir.1983), aff'd, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). Many procedural due process claims are grounded on violations of state-created rights . . . ; rights that do not enjoy constitutional standing. However, ***the right to a hearing prior to the deprivation is of constitutional stature and does not depend upon the nature of the right violated***. The rationale for granting procedural protection to an interest that does not rise to the level of a fundamental right lies at the very heart of our constitutional democracy: the prevention of arbitrary use of government power.

*Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996) (emphasis added); *see also Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1 (1978) (finding that "[a]lthough the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause" (*quoting Board of Regents v. Roth*, 408 U.S. 564, 577 (1972))).

To this end, Plaintiffs are correct when they assert that "[t]he question of whether the interest recognized by Ohio law is a property right to which due process attaches is a federal question, not a state matter." (Doc. 61 at 1.) However, Plaintiffs' argument puts the cart before the horse, so to speak, because in resolving due process claims, "the existence of *a 'protected' right* must be the threshold determination." *Grinage*, 82 F.3d at 1350 (emphasis added). Specifically, Plaintiffs' assertion that the next of kin in Ohio have a "substantive interest in the remains of their deceased loved ones" (doc. 61 at 2), while generally correct, implies a broader protected right than that which applicable precedent likely intended. At issue here are not the remains of a decedent in general but specifically those body parts of a decedent that are removed and retained by a coroner for the purpose of forensic examination and testing.

The question of whether the state of Ohio has granted a decedent's family members rights in the individual parts of a dead body under certain circumstances is not one of first impression in this Circuit. The Sixth Circuit Court of Appeals has held that a plaintiff has a "legitimate claim of entitlement" under Ohio law in her deceased husband's body, including his corneas, that is protected by the due process clause of the Fourteenth Amendment. *Brotherton v. Cleveland*, 923 F.2d 477, 482 (6th Cir. 1991). The plaintiff in *Brotherton* sued the Hamilton County, Ohio coroner and others after she learned from her husband's autopsy report that the coroner had–without her consent–permitted her husband's corneas to be removed and used as anatomical gifts. *Id*. Having determined that the plaintiff's section 1983 claim depended upon her having a constitutionally protected property interest in her husband's corneas, the court went on to articulate the standard for determining whether an interest is entitled to due process protections. *Id*. at 479-80.

5

> Property interests protected by the due process clause must be more than abstract desires or attractions to a benefit. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972). The due process clause only protects those interests to which one has a "legitimate claim of entitlement." *Id.* at 577, 92 S. Ct. at 2709. This has been defined to include "any significant property interests," *Boddie v. Connecticut*, 401 U.S. 371 at 379, 91 S. Ct. 780, 786, 28 L. Ed. 2d 113 (1971), including statutory entitlements.

*Id.* at 480.

The *Brotherton* court then looked to Ohio law to determine whether the plaintiff's interest in her husband's corneas rose to the level of a "legitimate claim of entitlement" protected by the due process clause. The court's examination of state law revealed that, while Ohio courts avoided characterizing the right in a dead body as a property right, they clearly acknowledged that a surviving custodian had "some interest" in the deceased, namely a "possessory right." *Id.* (discussing *Carney v. Knollwood Cemetery Ass'n*, 33 Ohio App. 3d 31, 514 N.E.2d 430 (1986) and *Everman v. Davis*, 54 Ohio App. 3d 119, 561 N.E.2d 547). Additionally, the court looked to the Ohio Anatomical Gift statute, Ohio Rev. Code § 2108.02(B), which grants a third-party survivor, under certain circumstances, the authority to make or decline to make anatomical gifts of the body parts of another, including corneas. *Id.* at 482. The court thus concluded that "the aggregate of rights granted by the state of Ohio to [the plaintiff] rises to the level of a 'legitimate claim of entitlement' in [the decedent's] body, including his corneas, protected by the due process clause of the fourteenth amendment."[3]

---

[3] Notably, the *Brotherton* court found that it did not need to determine whether the Supreme Court of Ohio would categorize a spouse's interest in the dead body as "property": "Although the existence of an interest may be a matter of state law, whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the due process clause is determined by federal law." *Id.* at 481-82.

6

Not long after it decided *Brotherton*, the Sixth Circuit again considered a due process violation claim arising out of an autopsy. In *Montgomery v. County of Clinton*, No. 90-1940, 1991 WL 153071 (6th Cir. Aug. 9, 1991), the mother of a boy killed in a high-speed auto accident asserted that the autopsy done on her son, without her notice or consent, violated her due process rights. As a basis for her claim, the mother pointed to a Michigan statute which required the medical examiner to use diligent effort to notify the next of kin prior to performing an autopsy. The *Montgomery* court distinguished *Brotherton* at least in part on the basis of the statute underlying the claim:

> There is no merit in the procedural due process claim founded on *the state statutory requirement* that the medical examiner make a diligent effort to notify the next of kin as to the decision to perform an autopsy. Whatever the nature of the right *created by the statute* there is an insufficient liberty or property interest under this statute to create a valid procedural due process claim. Although the notice requirement in the state statute does not appear to be discretionary, it does not purport to establish a right to control the dead body.

*Id.* at *2 (emphasis added).

In light of *Brotherton* and *Montgomery*, the threshold question in this due process claim is whether, under Ohio law, there exists for the next of kin of a decedent upon whom an autopsy has been performed "an interest" in the decedent's tissues and organs removed and retained by the coroner for forensic examination and testing. *Howard*, 82 F.3d at 1349. If so, then regardless of the nature of that "interest," it is a matter of federal law whether that interest rises to a level of a "legitimate claim of entitlement" protected by the Fourteenth Amendment. *Roth*, 408 U.S. at 577.

7

### C. The State-Created Right

That Ohio law affords next of kin a protected right in the "body" of the decedent is beyond dispute.[4] However, this does not, as Plaintiffs suggest, automatically confer to the next of kin a protected right in "body parts" of a decedent removed and retained by the coroner for forensic examination and testing. This is highlighted by the recent enactment of Ohio Rev. Code § 313.123(B), which provides that "retained tissues, organs, blood, other bodily fluids, gases, or any other specimens from an autopsy are medical waste and shall be disposed of in accordance with applicable federal and state laws." The only exception, stated in § 313.123(B)(2), is when "the coroner has reason to believe that the autopsy is contrary to the deceased person's religious beliefs," in which case "if the coroner removes any specimens from the body of the deceased person, the coroner shall return the specimens, as soon as is practicable, to the person who has the right to the disposition of the body." Arguably, if the Ohio legislature recognized a protected right in a decedent's tissues and organs removed and retained by the coroner for forensic examination, the statute would not confine return of the specimens to a religious decedent's next of kin.

As the Sixth Circuit made clear in *Whaley v. County of Tuscola*, decided four years after *Brotherton*, a federal court must consider the applicable state statutes before determining

---

[4] *See Carney*, 33 Ohio App. 3d at 37, 514 N.E.2d 430 (acknowledging a cause of action for mishandling of a dead body as a subspecies of the tort of infliction of emotional distress); *Everman*, 54 Ohio App. 3d at 122, 561 N.E.2d 547 (stating that "[t]here is no issue in this case of the possessory right of a spouse or other appropriate member of the family of a deceased for the purposes of preparation, mourning and burial"); *Biro v. Hartman Funeral Home*, 107 Ohio App. 3d 508, 512, 669 N.E.2d 65 (1995) (finding that the next of kin of the decedent had legal standing to maintain an action in tort for desecration of his father's remains); Ohio Rev. Code § 313.14 ("The next of kin, other relatives, or friends of the deceased person, in the order named, shall have prior right as to disposition of the body of such deceased person.").

8

whether a person has a state-created protectable interest or entitlement. 58 F.3d 1111, 1115 (6th Cir. 1995) (discussing *Brotherton* and explaining that "[w]hen these Ohio cases, *and* the Ohio statute granting the next of kin the prior right to dispose of the body, *and* the Ohio Anatomical Act are taken together, it demonstrates that in Ohio there are existing 'rules and understandings' which grant the next of kin the right to dispose of the body by making a gift of it, to prevent others from damaging the body, and to possess the body for purposes of burial" (emphasis added)).

Given that any rights Plaintiffs may have in their son's body parts "are created and their dimensions . . . defined by existing rules or understandings that stem from an independent source such as state-law rules," this Court must consider the entire sphere of Ohio law touching upon the issue of proper handling of a deceased's body following an autopsy. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Accordingly, this Court simply may not ignore the recent enactment of Ohio Rev. Code § 313.123 and the potentially limiting effect it may have on the rights of persons in the intact remains of their loved ones. In any due process claim, "[r]esolution of the federal issue begins ... with a determination of what it is that state law provides." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005). Thus, this Court cannot discern whether Plaintiffs can pursue their § 1983 claim until it knows whether Ohio law provides the next of kin with a right to the decedent's tissues, organs, blood or other specimens removed and retained by the coroner for forensic examination and testing.

### D. The Certified Question

The Court now must articulate the question that will be determinative of this proceeding–the first of the Ohio Supreme Court's two prerequisites to certification. It concludes

9

that the proper question in this case is whether the next of kin of a decedent, upon whom an autopsy has been performed, have a "protected right" under Ohio law in the decedent's tissues, organs, blood or other body parts that have been removed and retained by the coroner for forensic examination and testing.  In other words, contrary to the position taken by the interested parties in their motions to certify, the question is not whether the next of kin have a "property interest" in the decedent's body parts.  That is a question of federal law to be resolved after the preliminary determination of whether the state recognizes a protected right in the matter claimed.  *See Town of Castle Rock*, 545 U.S. at 757.  Additionally, the proper question concerns "the decedent's tissues, organs, blood or other body parts" and not just the brain and heart as Plaintiffs contend, because these terms generally parallel the language used in Ohio Rev. Code § 313.123 concerning disposal of specimens retained from an autopsy–which is the precise issue here.

As to the second certification criteria–whether there is controlling Ohio Supreme Court precedent on the issue–the answer is plainly that there is not.  The Ohio Supreme Court has never addressed the issue of whether next of kin have a protected right under Ohio law in the decedent's body parts removed and retained for forensic examination.

Finally, while the decision to certify a question to the state supreme court is discretionary, there is ample guidance that doing so under these circumstances is appropriate.  As Judge Beckwith recognized in her consideration of these very issues in *Hainey*, "[t]his case presents difficult and emotional issues involving the coroner's statutory duty to perform autopsies, the retention of certain organs of the deceased for diagnostic purposes, [and] Plaintiffs' wishes to recover all of the remains and bury their loved ones in as complete a state as

the circumstances of death will permit." *Hainey*, 2005 WL 2397704 at *1. Clearly, there are compelling interests on both sides of this scenario, and facts adduced in the *Hainey* case demonstrated that "the coroner's policy of not notifying the next-of-kin that he had retained the brains of their decedents was motivated by nothing more than a desire to avoid inflicting additional unnecessary pain on Plaintiffs." *Id*. at *5.[5]

This Court need not tread further down the path of presuming what rights Ohio affords next of kin with respect to their decedent's remains. Certainly this case presents "powerful considerations" supporting a district court's certification of a state law question prior to the disposition of a due process claim:

> First, principles of federalism and comity favor giving a State's high court the opportunity to answer important questions of state law, particularly when those questions implicate uniquely local matters . . . and might well require the weighing of policy considerations for their correct resolution. . . . Second, by certifying a potentially dispositive state-law issue, the Court would adhere to its wise policy of avoiding the unnecessary adjudication of difficult questions of constitutional law. . . . Third, certification would promote both judicial economy and fairness to the parties. After all, the [State] Supreme Court is the ultimate authority on the meaning of [State] law, and if in later litigation it should disagree with this Court's provisional state-law holding, our efforts will have been wasted . . . .

*Castle Rock*, 545 U.S. at 777 (Stevens, J., dissenting) (internal citations omitted). Given the important policy considerations at issue in this case, the fact that resolution of the state-law issue is potentially dispositive, and the prospect that a later state-court decision might render this Court's work a nullity, certification is the better course.

---

[5] What's more, after the *Hainey* lawsuit was filed, the Hamilton County coroner's office began notifying the next of kin when it retained organs for examination, and testimony from the deputy coroners showed that in many cases, the next of kin **would rather not know** that the coroner had retained organs of the decedent. *Id*. at fn. 5.

11

**III.    CONCLUSION**

For the foregoing reasons, the Court GRANTS, with modification, the motions of Defendants and other interested parties to certify a question to the Ohio Supreme Court. The question certified to the Ohio Supreme Court is as follows:

> Whether the next of kin of a decedent, upon whom an autopsy has been performed, have a protected right under Ohio law in the decedent's tissues, organs, blood or other body parts that have been removed and retained by the coroner for forensic examination and testing.

IT IS SO ORDERED.

   s/Susan J. Dlott
Susan J. Dlott
United States District Judge

13